**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re                                 :

                                          : Chapter 15

Petition of David McGuigan, as foreign      :
representative of                          : Case No. 10-10-14990 (___)

                                          :

Allianz Global Corporate & Specialty (France),  : (Joint Administration Requested)
Allianz IARD,                                  :
Delvag Luftfahrtversicherungs-AG, and       :
Nürnberger Allgemeine Versicherungs-AG      :

                                          :

Debtors in a Foreign Proceeding.         :

------------------------------------------------------------ x

# MEMORANDUM OF LAW
## IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN PROCEEDINGS AND MOTION FOR PERMANENT INJUNCTION

SIDLEY AUSTIN LLP
Lee S. Attanasio
Alex R. Rovira
Debra W. Minoff
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Petitioner*

# TABLE OF CONTENTS

**PAGE**

I.  PRELIMINARY STATEMENT ........................................................................................ 2

II. FACTS ............................................................................................................................... 5

III. JURISDICTION AND VENUE ....................................................................................... 5

IV. ARGUMENT..................................................................................................................... 5

    A.  These Chapter 15 Cases Have Been Properly Commenced Under Chapter 15................. 5

    B.  These Chapter 15 Cases Were Commenced in Accordance with Section 1515(a)........... 6

        1.  These Chapter 15 Cases Were Commenced by a Foreign Representative ................... 6

        2.  The English Proceedings Concern Foreign Proceedings ............................................. 7

    C.  These Chapter 15 Cases were Commenced in Accordance with Section 1515(b) .......... 15

    D.  These Chapter 15 Cases Were Commenced in Accordance with Section 1515(c) ......... 16

        1.  Relief Upon Recognition of Foreign Proceedings ..................................................... 17

    E.  The Petitioner Satisfies the Requirements for a Permanent Injunction in
        Accordance With Section 1521(e) ................................................................................. 20

V.  CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

Canada S. Ry. Co. v. Gebhard
    109 U.S. 527 (1883)..............................................................................20

Civic Ass'n of Deaf of New York City, Inc. v. Giuliani
    915 F. Supp. 622 (S.D.N.Y. 1996)........................................................20

Cunard S.S. Co. v. Salen Reefer Services, AB.
    773 F.2d 452 (2d Cir. 1985)..................................................................20

In re Bear Stearns High-Grade Structured Strategies Master Fund, Ltd.
    2007 WL 2479483, *7 (Bankr. S.D.N.Y. Aug. 30, 2007)……… ............................12

In re MMG, LLC
    256 B.R. 544 (Bankr. S.D.N.Y. 2000).....................................................20

In re NRG Victory Reinsurance Ltd.
    Case No. 06-11052 (Bankr. S.D.N.Y. 2006) (JMP) .....................................6

In re Sphinx, Ltd.
    351 B.R. 103 (Bankr. S.D.N.Y. 2006)......................................................9

La Mutuelle du Mans Assurances IARD UK Branch MMA Account,
    Case No. 05-60100 (Bankr. S.D.N.Y. 2005) (BRL).....................................6

NextG Networks of New York, Inc. v. City of New York
    No. 03 CIV 9672 RMB/JCF, 2006 WL 538189 (S.D.N.Y. Mar. 6, 2006).................20

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B
    825 F.2d 709 (2d Cir. 1987)..................................................................20

## STATUTES AND OTHER AUTHORITIES

11 U.S.C. § 101(2) ...........................................................................2

11 U.S.C. § 101(24) .......................................................................6,7

11 U.S.C. § 101(23) .......................................................................7,8

11 U.S.C. § 105...............................................................................1

11 U.S.C. § 362..............................................................................13

11 U.S.C. § 1501(c)(1)....................................................................................5

11 U.S.C. § 1502............................................................................................1

11 U.S.C. § 1502(4)....................................................................................9,13

11 U.S.C. § 1502(5).......................................................................................11

11 U.S.C. § 1504.........................................................................................1,5

11 U.S.C. § 1509............................................................................................5

11 U.S.C. § 1515....................................................................................1,10,15

11 U.S.C. § 1515(a)......................................................................................5,6

11 U.S.C. § 1515(c)...................................................................................6,12,16

11 U.S.C. § 1515(b)..................................................................................6,12,15

11 U.S.C. § 1516(b)....................................................................................12,16

11 U.S.C. § 1516(c)........................................................................................9

11 U.S.C. § 1517............................................................................................1

11 U.S.C. § 1517(b)(1)..................................................................................9,10

11 U.S.C. § 1517(b)(2).....................................................................................13

11 U.S.C. § 1520.........................................................................................1,17

11 U.S.C. § 1520(a).....................................................................................13,17

11 U.S.C. § 1521...................................................................................1,14,15,18

11 U.S.C. § 1521(a)........................................................................................13

11 U.S.C. § 1521(a)(1), (a)(2), (a)(7) .................................................................14,18

11 U.S.C. § 1521(e)....................................................................................15,20

11 U.S.C. § 1522(a)....................................................................................15,19

28 U.S.C. § 157............................................................................................5

28 U.S.C. § 157(b)(2)(A)............................................................................................4

28 U.S.C. § 1334......................................................................................................4

28 U.S.C. § 1410(1)..................................................................................................5

28 U.S.C. § 1410(3)..................................................................................................5

Fed. R. Bankr. Proc. 65............................................................................................1

Fed. R. Civ. Proc. 65................................................................................................1

H.R. Rep. 109-31, pt. 1, 109th Cong. 1st Sess. at 112-113 (2005)........................9

Part 26 the Companies Act (2006) (England)......................................................1,7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
In re                                        :
                                             : Chapter 15
Petition of David McGuigan, as foreign       :
representative of                            : Case No. 10-14990 (___)
                                             :
Allianz Global Corporate & Specialty (France), : (Joint Administration Pending)
Allianz IARD,                                :
Delvag Luftfahrtversicherungs-AG, and        :
Nürnberger Allgemeine Versicherungs-AG       :
                                             :
Debtors in a Foreign Proceeding.             :
------------------------------------------------------------- x
```

## MEMORANDUM OF LAW
## IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN PROCEEDINGS AND MOTION FOR PERMANENT INJUNCTION

David McGuigan, (the "Petitioner"), as the duly appointed and authorized foreign representative, as defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Allianz Global Corporate & Specialty (France) (formerly known as Compagnie d'Assurances Maritimes Aeriennes et Terrestres when writing direct and reinsurance business in the CUAL Pool, and hereinafter "Allianz Global"), Allianz IARD (formerly known as Assurances Générales de France I.A.R.T. when writing direct insurance and reinsurance business in the CUAL Pool, and hereinafter "Allianz IARD"), Delvag Luftfahrtversicherungs-AG ("Delvag") and Nürnberger Allgemeine Versicherungs-AG ("Nürnberger") (each a "Scheme Company" or "Debtor", and together the "Scheme Companies" or "Debtors") which are subject to jointly administered adjustment of debt proceedings (the "English Proceedings") and bound by those certain schemes of arrangement pursuant to Part 26 of the Companies Act 2006 (the "Schemes")[1] sanctioned by the High Court

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed to them in the Schemes or the Petition and Motion.

of Justice of England and Wales (the "English Court") on July 9, 2010 for the Scheme

Companies, by his U.S. counsel, Sidley Austin LLP, respectfully submits this Memorandum of

Law in Support of the Verified Petition Under Chapter 15 For Recognition Of Foreign

Proceedings (the "Chapter 15 Petition") And Motion For Permanent Injunction (the "Petition

and Motion") pursuant to sections 105, 1502, 1504, 1515, 1517, 1520 and 1521 of the

Bankruptcy Code and Rule 65 of the Federal Rules of Civil Procedure as made applicable by

Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## I. PRELIMINARY STATEMENT

Each of the Scheme Companies is an insurance company.  Allianz Global and Allianz

IARD are both incorporated under the laws of France and maintain their registered offices in

France.  Delvag and Nürnberger are both incorporated under the laws of Germany and maintain

their registered offices in Germany.

The Scheme Companies wrote both direct insurance and reinsurance business in the

London insurance market (the "London Market"), through Camomile Underwriting Agencies

Limited ("CUAL") (collectively known as the "CUAL Business") in a pooling[2] arrangement

from 1978 to 1995 (the "CUAL Pool").  CUAL was incorporated in the United Kingdom in

April 1977.  Its principal purpose was to carry on the business of insurance agents and brokers,

underwriting agents and underwriters.  CUAL principally functioned as the insurance

underwriting agent in such transactions.  CUAL ceased underwriting on December 31, 1995 and

was subsequently dissolved. The business written by the CUAL Pool was predominantly small

lines of both direct and facultative non-marine business placed through London Market brokers.

---

[2]    Pooling is a method of spreading risk whereby a syndicate or association of insurers, writing a specific class of
insurance, agree to share the premiums and losses in agreed proportions.

NY1 7340659v.14

The CUAL Pool wrote some proportional and excess of loss treaty business. The Petitioner believes that all of the CUAL Business was written in the London Market. The Scheme is proposed by each Scheme Company in respect only of its involvement in the CUAL Business.[3]

The CUAL Business has been in solvent run-off since December 31, 1995 and no new CUAL Business has been written subsequently. The run-off involves the management of liabilities arising from the CUAL Business. In the normal course, it is estimated that it would take at least another 30 to 40 years to run-off the remaining liabilities which comprise the CUAL Business, given that certain risks, by their nature, may not materialize, be known, be reported and be processed for some time.

Accordingly, to bring the run-off of the CUAL Business to a close, to reduce administrative costs and to terminate the CUAL Business in a unified and coordinated manner, the Scheme Companies have each proposed a "cut off" scheme of arrangement pursuant to Part 26 of the Companies Act 2006 (each, a "<u>Scheme</u>" and collectively, the "<u>Schemes</u>").

The Schemes for Allianz Global, Allianz IARD, Delvag, and Nürnberger are separate schemes of arrangement, but since they are materially identical in their terms, the Schemes are set out in a single scheme document. In the English Proceedings on December 17, 2009, the English Court approved the application of the Scheme Companies for an order to convene meetings of their Scheme Creditors to consider and, if thought fit, approve the Schemes. Under the Schemes, the value of all Scheme Claims will be estimated and full and final payments, adjusted, where applicable, by the application of a time value discount, will be made to Scheme

---

[3]     Sovereign Marine & General Insurance Company Limited ("<u>Sovereign</u>"), a company which is now insolvent, also wrote business as part of the CUAL Pool. However, no business of Sovereign, whether written through CUAL or otherwise, is included in the Scheme. Sovereign has already entered into a scheme of arrangement with its creditors to bring finality in respect of all of the business which it wrote (including the CUAL Business), and the date for submitting Scheme Claims (as defined in that Scheme) has now passed.

NY1 7340659v.14

Creditors holding such claims, considerably sooner than if the run-off of the Scheme Companies continued in the ordinary course. On June 10, 2010, the requisite majorities of the Scheme Creditors of each of the Scheme Companies voted in favor of the Schemes. Indeed, each Scheme was unanimously approved. On July 9, 2010, the English Court, upon notice and a hearing, sanctioned the Schemes. The Effective Date of each of the Schemes is July 26, 2010, the date on which a copy of the orders of the English Court sanctioning the Schemes (the "Sanction Orders") were delivered to the Registrar of Companies for England and Wales.

To prevent U.S. based creditors of the Scheme Companies from pursuing actions against them, the Scheme Companies have filed the Petition and Motion seeking, pursuant to chapter 15 of the Bankruptcy Code, the ancillary assistance of this Court to aid in the implementation of the Schemes and an order that will, inter alia, give full force and effect to the Schemes in the United States. Chapter 15 of the Bankruptcy Code, among other things, authorizes this Court to: (i) grant recognition of foreign proceedings upon the commencement of a case under chapter 15 by a foreign representative; and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceedings, including by granting appropriate relief pursuant to section 1521 of the Bankruptcy Code.

The Petition and Motion satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, the relief requested herein is necessary to give effect to the Schemes in the United States and is appropriate under chapter 15 of the Bankruptcy Code. Absent this relief, the Scheme Companies and their creditors may be subject to individual creditor actions, rather than collective action. Such a situation could put at risk the validity and effect of the English Court's Sanction Orders, and indeed, the Schemes themselves. Granting recognition to the Schemes and the relief requested herein is consistent with the goals of

NY1 7340659v.14

international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code.

## II. FACTS

This Court is respectfully referred to the facts and circumstances as set forth before this Court in the Petition and Motion, and the Declaration of David McGuigan in Support of Petition Under Chapter 15 for Recognition of Foreign Proceedings and Motion for Permanent Injunction and Order (the "McGuigan Declaration"), each filed contemporaneously herewith and incorporated in their entirety by reference as fully set forth herein.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

The Petitioner respectfully submits that venue in this District is consistent with the interests of justice and the convenience of the parties with respect to the relief sought by the Petition and Motion pursuant to 28 U.S.C. § 1410(3). Accordingly, venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## IV. ARGUMENT

### A. These Chapter 15 Cases Have Been Properly Commenced Under Chapter 15

These chapter 15 cases (the "Chapter 15 Cases") were duly and properly commenced in accordance with sections 1504 and 1509 of the Bankruptcy Code by filing petitions for recognition of foreign proceedings pursuant to section 1515(a), accompanied by all documents

and information required by section 1515(b) and (c).[4]  In addition, a duly Verified Petition and

Motion was filed contemporaneously with the Official Form 1 Chapter 15 Petitions, along with

the list required by Rule 1007(a)(4) of the Bankruptcy Rules and the Statement of Foreign

Representative required by 11 U.S.C. § 1515(c).

To comply with the requirements of section 1515 of the Bankruptcy Code, clear and

objective standards must be satisfied by the Petitioner and the Petitioner respectfully submits

that those requirements have been satisfied by the Petition and Motion as more fully addressed

below.

B.    These Chapter 15 Cases Were Commenced in Accordance with Section 1515(a)

Section 1515(a) establishes two principal requirements: (i) the Petitioner must qualify as

a "foreign representative" and (ii) in this case, the English Proceedings must qualify as "foreign

proceedings."

### 1.    These Chapter 15 Cases Were Commenced by a Foreign Representative

These Chapter 15 Cases were commenced by the duly appointed and authorized "foreign

representative" as that term is defined under section 101(24) of the Bankruptcy Code.  Section

101(24) defines a "foreign representative" as:

> a person or body, including a person or body appointed on an
> interim basis, authorized in a foreign proceeding to administer the
> reorganization or the liquidation of the debtor's assets or affairs or
> to act as a representative of such foreign proceeding.

---

[4]    Moreover, chapter 15 expressly recognizes "foreign insurance companies" as eligible to seek assistance in the
United States in connection with a foreign proceeding.  See 11 U.S.C. § 1501(c)(1).  Although the provisions
of chapter 15 became effective through the Bankruptcy Abuse Prevention and Consumer Protection Act of
2005 only as of October 17, 2005, this Court has recognized several solvent schemes of arrangement of foreign
insurance companies in run-off, such as the instant Schemes, as foreign proceedings entitled to recognition and
ancillary relief, including injunctive relief.  See, e.g., In re Greyfriars Insurance Company Limited, et al., Case
Nos. 07-B-12934 (JMP) through 07-B-12944 (Bankr. S.D.N.Y. 2007) (JMP); In re Oslo Reinsurance Co. (UK)
Ltd and Oslo Reinsurance Co. ASA, Case No. 07-12211 (Bankr. S.D.N.Y. 2007) (RDD); In re NRG Victory
Reinsurance Ltd, Case No. 06-11052 (Bankr. S.D.N.Y. 2006) (JMP); La Mutuelle du Mans Assurances IARD
UK Branch MMA Account, Case No. 05-60100 (Bankr. S.D.N.Y. 2005) (BRL).

11 U.S.C. § 101(24).  The Petitioner is David McGuigan.  As has been declared, affirmed and certified by the English Court, Mr. McGuigan has been duly appointed by the Scheme Companies to represent the Scheme Companies as their foreign representative for the purpose of carrying out and implementing the Schemes and, specifically, to commence these Chapter 15 Cases on their behalf in accordance with the Schemes.  <u>See</u> the Convening Order (as defined herein) at ¶ 31 annexed as <u>Exhibit G</u> to the Petition and Motion.  Furthermore, the Schemes expressly contemplate the commencement of the Chapter 15 Cases, by the foreign representative, for the Scheme Companies to effectuate the purposes of the Schemes in relation to the U.S. assets of the Scheme Companies and their Scheme Creditors.  <u>See</u> Explanatory Statement, at p. 7 and pp. 49-53, attached to the Petition and Motion as <u>Exhibit D</u>.  From the face of the evidence submitted in connection with the Petition and Motion, the Petitioner has standing and authority to represent the Scheme Companies as their "foreign representative" in these proceedings.

### 2.    The English Proceedings Concern Foreign Proceedings

Section 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  As more fully described in the Petition and Motion, the Schemes are a collective agreement for the expeditious, economical and equitable agreement or determination and payment of Scheme Claims.  On December 15, 2009, the Scheme Companies filed an application with the English Court seeking permission to convene creditors' meetings (the "<u>Creditors' Meetings</u>") for the purpose of allowing Scheme Creditors to vote on the Schemes pursuant to Part 26 of the Companies Act 2006 (England) (the "<u>Companies Act</u>").

On December 17, 2009, the English Court entered the Convening Order authorizing the Scheme Companies to convene Creditors' Meetings to consider and, if thought fit, approve the Schemes. <u>See</u> Convening Order attached to Petition and Motion as <u>Exhibit G</u>. Pursuant to the Convening Order, at least 56 calendar days prior to the Creditors' Meetings, Whittington Insurance Services Limited ("<u>Whittington</u>"), was required to send to all policyholders who may be Scheme Creditors (the "<u>Notice Parties</u>") a cover letter approved by the English Court (the "<u>Covering Letter</u>") containing copies of (a) the notice convening the Creditors' Meetings (the "<u>Notice</u>"); (b) the <u>Explanatory Statement</u>; and (c) the Form of Proxy and Voting Form (the "<u>Voting Form</u>").

On June 10, 2010, the date of the Creditors' Meetings, the requisite majorities of Scheme Creditors voted in favor of the Schemes. Indeed, Scheme Creditors unanimously voted in favor of the Schemes. On July 9, 2010, the English Court, upon notice and hearing, sanctioned the Schemes. A true and correct copy of each of the Sanction Orders is attached to the Petition and Motion as <u>Exhibit A</u>. The Effective Date of each of the Schemes is July 26, 2010, the date on which a copy of the Sanction Orders was delivered to the Registrar of Companies for England and Wales. <u>See</u> <u>Exhibit B</u> to the Petition and Motion: Registrar of Companies Stamped Receipt.

The English Proceedings respecting the Schemes constitute a collective judicial proceeding in a foreign country under a law relating to adjustment of debt in which the assets and affairs of the debtors are subject to the control or supervision by a foreign court for the purpose of liquidation of such debts. Accordingly, these Chapter 15 Cases concern foreign proceedings within the meaning of 11 U.S.C. § 101(23).

a. _The English Proceedings with Respect to Scheme Companies are "Foreign Main Proceedings" under 11 U.S.C. § 1502(4)_

Under section 1517(b)(1), a foreign proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the "center of its main interests" (the "COMI"). 11 U.S.C. § 1517(b)(1). In the absence of evidence to the contrary, a foreign debtor's registered office is presumed to be the center of the debtor's main interests. See 11 U.S.C. § 1516(c).

The Petitioner believes that the foreign proceeding in respect of the Scheme Companies should be recognized as a "foreign main proceeding" because, notwithstanding the Debtors' registered offices in France and Germany, the Debtors' center of main interest with respect to the Scheme Liabilities and the CUAL Pool is in the United Kingdom. See H.R. Rep. 109-31, pt.1, 109th Cong. 1st Sess. at 112-113 (2005) (noting that "[t]he presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy").

This Court has noted that

> [a]lthough the Bankruptcy Code does not state the type of evidence required to rebut the presumption that the COMI is the debtor's place of registration or incorporation, various factors, singly or combined, could be relevant to such a determination: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably, could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

See In re Sphinx, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

Additionally, in determining whether a company's COMI is located somewhere other than the location of its registered office, courts have considered where the creditors of the company and other third parties think or have thought the company's COMI is located. See

Shierson v. Vlieland–Boddy [2005] 1 WLR 3966 (confirming that in making its determination as to a debtor's COMI a court must have regard to the need for the COMI to be ascertainable by third parties, in particular creditors and potential creditors).

(i)   *The Majority of The Scheme Companies' CUAL Business Interests, Including its Creditors and Assets, are in England*

All of the Scheme Companies have a significant connection with England.  All of the Scheme Companies have conducted insurance business in the London Market for a number of years.  In particular, the Petitioner believes that all of the business included in the Scheme was underwritten for the Scheme Companies by CUAL, a company incorporated under the laws of England, in London and was placed through the London Market by CUAL and/or other English brokers and agents.  The Petitioner has been informed by Whittington that the vast majority of the policies that could give rise to Scheme Claims are governed by English law.

In addition, the run-off of the CUAL Business has been managed by Whittington, an English corporation, in London since 1996.  Specifically, the CUAL Business was administered in the U.K. by Whittington on behalf of each of the Scheme Companies.  Further, CUAL policyholders have dealt with Whittington in the U.K. and received communications, from Whittington in the U.K. on behalf of the Scheme Companies.  Accordingly, it can be assumed that CUAL policyholders have the expectation and think or have thought that the COMI is in the U.K.

As discussed above, the CUAL Pool ceased underwriting new policies in 1995 and the CUAL Business has been in run-off since 1996.  The economic realities indicate that the Scheme Companies' center of main interests, with respect to the Scheme Liabilities and the CUAL Pool, should be where the majority of creditors are located in relation to the CUAL Business.

10

While the Scheme Companies are domiciled in either France or Germany, each Scheme Company has a substantial connection with the London Market.

### a. *Allianz Global*

Allianz Global has approximately 3,243 UK CUAL policyholders, approximately 3,689 US CUAL policyholders, approximately 96 French CUAL policyholders and approximately 93 German CUAL policyholders.

### b. *Allianz IARD*

Allianz IARD has approximately 866 UK CUAL policyholders, approximately 178 US CUAL policyholders, approximately 28 French CUAL policyholders and approximately 36 German CUAL policyholders.

### c. *Delvag Luftfahrtversicherungs-AG*

Delvag has approximately 1,058 UK CUAL policyholders, approximately 317 US CUAL policyholders, approximately 32 French CUAL policyholders and approximately 44 German CUAL policyholders.

### d. *Nürnberger Allgemeine Versicherungs-AG*

Nürnberger has approximately 834 UK CUAL policyholders, approximately 181 US CUAL policyholders, approximately 28 French CUAL policyholders and approximately 34 German CUAL policyholders.

The fact that the overall majority of the Scheme Companies' policyholders, with respect to the CUAL Business, are in England should weigh heavily in determining each Scheme Companies' respective center of main interest because the economic reality is that the CUAL Business is in run-off and therefore the Scheme Companies' activities in relation to the CUAL

Business relate solely to pursuing settlements and making payments to their creditors in respect of claims arising from insurance policies issued at least 15 years ago.

    *(ii)*    *<u>In the Alternative, the English Proceedings with Respect to the Scheme Companies are "Foreign Nonmain Proceedings" under 11 U.S.C. § 1502(5)</u>*

Alternatively, the English Proceedings with respect to the Scheme Companies should be recognized as "foreign nonmain proceedings" as defined in section 1502(5) of the Bankruptcy Code. 11 U.S.C. § 1502(5). Under section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign nonmain proceeding if it is pending in a country where the debtor has an establishment. 11 U.S.C. § 1517(b)(2). Section 1502 of the Bankruptcy Code defines an "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." See 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by conducting business locally. <u>See</u> <u>In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd</u>, 2007 WL 2479483, *7 (Bankr. S.D.N.Y. Aug. 30, 2007) (noting that, in reference to two other chapter 15 cases, "[t]he debtors conducted business there, thus meeting the 'establishment' requirement"). In the chapter 15 case of <u>Bear Stearns</u>, the court denied a request for recognition of foreign proceedings pending in the Cayman Islands as foreign nonmain given that "there is no (pertinent) nontransitory economic activity conducted locally in the Cayman Islands by the [debtors]." <u>In re Bear Stearns</u>, 2007 WL 2479483 at *7. As set forth in the Petition and Motion and the McGuigan Declaration, unlike the debtors in the <u>Bear Stearns</u> case, the Scheme Companies conduct, in relation to the CUAL Business and otherwise, pertinent nontransitory economic activity locally in the place where the foreign proceeding is pending, which in this instance is England.

While Allianz Global and Allianz IARD are both incorporated in France, and Delvag and Nürnberger are both incorporated in Germany, each is an "EEA insurer" within the meaning

of the Insurers (Reorganisation and Winding Up) Regulations 2004 authorized by its home state regulator, and each of the Scheme Companies is permitted to write, and indeed has written, insurance business in England. Moreover, it is believed that all of the Scheme Companies' business that is included in each Scheme was underwritten through the CUAL Pool in England and has been administered in London, first by CUAL and then by Whittington who has carried out the run-off of the CUAL Business since 1996. Accordingly, the Scheme Companies conduct pertinent nontransitory economic activity locally (in England) and therefore have an establishment in the foreign country in which the foreign proceeding is located in accordance with section 1502(2).[5] Thus, the English Proceedings and the Schemes should be recognized as "foreign nonmain proceedings" pursuant to section 1517(b)(2) of the Bankruptcy Code.

> (iii) *English Law Governs and Interprets the Schemes, and the Scheme Creditors Submit to the Exclusive Jurisdiction of the English Courts*

In addition, the Schemes are to be implemented and construed in accordance with English law. Pursuant to the Schemes, the Scheme Creditors agree (i) that the English Court shall have exclusive jurisdiction to hear and determine any dispute or proceedings arising out of the Schemes; and (ii) to submit to the exclusive jurisdiction of the English Court for such purposes. See Schemes, Exhibit D attached to the Petition and Motion, at ¶ 7.10.1.

Furthermore, it should weigh heavily on this Court's determination that the English Court, upon notice and a hearing, authorized the convening of Creditors' Meetings and sanctioned the Schemes so as to make the Schemes binding upon all Scheme Creditors. In order for the English Court to have the jurisdiction to do so, it had to be satisfied, and was in fact satisfied, that the Scheme Companies had a sufficient connection with the UK.

---

[5] This assertion is not intended as, nor should it be construed as, an admission for any purpose or proceeding other than for satisfying the requirements of having an "establishment" as defined in section 1502(2) of the Bankruptcy Code.

13

Accordingly, this Court should find that the English Proceedings are foreign main proceedings pursuant to 11 U.S.C. § 1502(4) of the Bankruptcy Code, or, alternatively, that the English proceedings are foreign nonmain proceedings pursuant to 11 U.S.C. § 1502(5) of the Bankruptcy Code.

(iv)    *No Other Foreign Proceedings or Objections by the French Financial Regulator or German Financial Regulator*

Based upon the information provided to him by Whittington, the Petitioner is aware of certain litigation involving one or more of the Scheme Companies that has been commenced or is pending in the United States and that is related to Scheme Claims (as defined in the Schemes) or the CUAL Business. The information listing the names of the parties to the litigation with respect to the CUAL Business is attached as Schedule 1 to the List Filed pursuant to Bankruptcy Rule 1007(a)(4) contemporaneously with this Petition and Motion. For the sake of completeness, the Petitioner attests that Allianz Global Corporate & Specialty (France) is also subject to another scheme of arrangement (the "WFUM Pools Scheme") which was sanctioned by the English Court on September 17, 2007 and was granted chapter 15 recognition on October 23, 2007. The WFUM Pools Scheme will be declared complete on September 21, 2010. See Statement of Foreign Representative Required by 11 U.S.C. § 1515. In addition, the French and German financial regulators, have been sent copies of the Scheme and Explanatory Statement and raised no objections.

(v)    *This Case Promotes the Best Interests of the Scheme Creditors and There is No Forum Shopping*

This is not a case where the debtor is looking to advantage one party in interest over another by forum shopping and choosing a favorable jurisdiction over another. Rather, these Chapter 15 Cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Schemes in a unified

14

collective process that was properly heard before the English Court and provides a fair and efficient mechanism under the laws of England where the majority of the policyholders are domiciled.

In light of the evidence set forth, the Petitioner submits that the center of main interests of the Scheme Companies in respect of the Scheme Liabilities and the CUAL Pool is in the United Kingdom, and as such, the English Proceedings in respect of the Schemes should be recognized as foreign main proceedings.

Alternatively, should the Court determine that the foreign proceeding in respect of the Scheme Companies is not a "foreign main proceeding," the Petitioner respectfully requests that the Court treat the Scheme Companies' chapter 15 Petition as one requesting recognition and relief as a "foreign nonmain proceeding," as defined in section 1502(5) of the Bankruptcy Code, as the foreign proceeding in the United Kingdom where the debtor clearly carries on a nontransitory economic activity and, therefore, has an "establishment" within the meaning of section 1502(2), thereby entitling it to recognition as a foreign nonmain proceeding pursuant to section 1517(b)(2) of the Bankruptcy Code.

C.      These Chapter 15 Cases were Commenced in Accordance with Section 1515(b)

To establish a basis for recognition under chapter 15, it is mandated that the petition be supported by documentation on which this Court may grant recognition.  Section 1515(b) of the Bankruptcy Code provides:

> A petition for recognition shall be accompanied by –
>
> (1)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>
> (2)     a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

<blockquote>
(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
</blockquote>

11 U.S.C. § 1515.  Here, the Petition and Motion is accompanied by: (i) the List required by Bankruptcy Rule 1007(a)(4); (ii) the Statement of Foreign Representative required by 11 U.S.C. § 1515(c); (iii) the Convening Order of the English Court authorizing the Scheme Companies to convene the Creditors' Meetings to vote on the Schemes which are the subject of the foreign proceedings; (iv) the Sanction Orders of the English Court sanctioning the Schemes; (v) evidence of the filing of the Sanction Orders with the Registrar of Companies for England and Wales rendering the Schemes effective; and (vi) a list of identifiable potential Scheme Creditors and other notice parties.

The Convening Order also duly authorized the Petitioner, as the designated foreign representative of the Scheme Companies, to commence these Chapter 15 Cases in implementation of the Schemes.  <u>See</u> Convening Order ¶ 31 attached to Petition and Motion as <u>Exhibit G</u>.  The Petition and Motion is further accompanied by the Explanatory Statement, which expressly states that a chapter 15 case shall be commenced to implement the Schemes. <u>See</u> Explanatory Statement, pp. 49-53, attached to the Petition and Motion as <u>Exhibit D</u>.  Each of these accompanying documents is supportive of recognition and collectively they satisfy the requirements of section 1515(b) of the Bankruptcy Code.[6]

      D.     <u>These Chapter 15 Cases Were Commenced in Accordance with Section 1515(c)</u>

Section 1515(c) of the Bankruptcy Code provides that a "petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).  The Statement of

---

[6] Section 1516(b) provides that "the court is entitled to presume that documents submitted in support of the petition for recognition are authentic, whether or not they have been legalized." 11 U.S.C. § 1516(b).

Foreign Representative Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings (the "Section 1515(c) Statement") was filed contemporaneously with the Petition and Motion, and identifies all foreign proceedings with respect to the Scheme Companies that currently are known to the Petitioner in satisfaction of the requirement of section 1515(c).

### 1. Relief Upon Recognition of Foreign Proceedings

#### a. Relief under Section 1520

Upon recognition of the English Proceedings as foreign main proceedings certain express relief is automatically granted as a matter of right. Section 1520(a) of the Bankruptcy Code provides that, upon recognition of a foreign proceeding that is a foreign main proceeding:

(1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2) sections 363, 549, and 552 apply to a transfer of a debtor's interest in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

(3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a). Specifically, upon the Court's recognition that the English Proceedings are foreign main proceedings, section 1520(a)(1) of the Bankruptcy Code requires that the automatic stay provisions of section 362 of the Bankruptcy Code apply to protect the Scheme Companies from any claims as well as any acts to take possession of the Scheme Companies' property. Such relief is consistent with the terms of the Schemes, which bar any actions against the Scheme Companies or their property to enforce claims against the Scheme Companies

unless a Scheme Company has failed to perform any obligation to make payment to a Scheme Creditor in respect of Net Ascertained Claim and then only in respect of such failure.

    *b. Relief Under Section 1521(a) is Necessary and Appropriate*

Upon recognition of a foreign main or nonmain proceeding, section 1521(a) authorizes the Court to grant certain relief at the request of the foreign representative. Where necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors, section 1521(a) provides that the Court may grant an order, <u>inter</u> <u>alia</u>,

(1)    staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities;

(2)    staying execution against the debtor's assets;

(3)    suspending the right to transfer, encumber or otherwise dispose of any of the debtor's assets; and

(4)    granting any additional relief that may be available to a trustee, except for the relief available under sections 522, 544, 545, 547, 548, 550 and 724(e).

11 U.S.C. § 1521(a)(1), (a)(2), (a)(3), (a)(7).

In addition to the relief as a matter of right provided by section 1520 of the Bankruptcy Code, the Petitioner requests relief under section 1521 to assist in the effective implementation of the Schemes. Should the Court determine that the foreign proceeding in respect the Scheme Companies is not a "foreign main proceeding," the Petitioner respectfully requests that this Court grant, pursuant to section 1521 of the Bankruptcy Code, the same relief against individual creditors that the Scheme Companies would automatically enjoy under section 1520, including: (i) staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of the Scheme Companies; (ii) staying execution against assets of the Scheme Companies; (iii) suspending the right to transfer, encumber or otherwise

dispose of any assets of the Scheme Companies; and (iv) requiring all persons and entities in possession, custody or control of property or the proceeds of such property in the United States of the Scheme Companies to turn over and account for such property or proceeds to the Petitioner for administration in the United Kingdom in accordance with the Schemes and finding that the interests of the Scheme Creditors in the United States are sufficiently protected by such administration and that, under the law of the United States, such property and proceeds should be administered in the English Proceedings. Without the relief requested, the Schemes could not be administered in a fair and efficient manner that would protect the interests of all of the Scheme Companies' stakeholders, nor would the value of the Scheme Companies' assets be maximized.

The relief requested complies with the English Court's mandate that the Petitioner seek injunctive relief against U.S. based Scheme Creditors under chapter 15 for each of the Scheme Companies. This additional relief will channel all claims of the Scheme Creditors against the Scheme Companies into one collective proceeding in accordance with the Schemes, and in the process, protect the interest of creditors in having their claims valued and paid on a consistent and non-discriminatory basis, in accordance with section 1522(a) of the Bankruptcy Code.

In the absence of the relief requested under section 1521, including the permanent injunction, creditors in the United States could proceed to judgment without regard to the Schemes, leading to unequal treatment of creditors, dismemberment of the Scheme Companies' estates and irreparable injury to the Scheme Companies and the Scheme Creditors. Indeed, without this relief, the orderly determination and settlement of Scheme Claims may be jeopardized and available resources may be forced to be extended to defend against collection and other self-help actions brought in the United States in contravention of the intent of the

Schemes and the Sanction Orders granted by the English Court. Accordingly, such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Scheme Companies and the interests of all Scheme Creditors. Accordingly, section 1521 of the Bankruptcy Code expressly authorizes this Court to grant the requested relief.

> E.    The Petitioner Satisfies the Requirements for a Permanent Injunction in Accordance With Section 1521(e)

The standards, procedures and limitations applicable generally to an injunction also apply to relief sought under section 1521(a). See 11 U.S.C. § 1521(e). The relief sought in the Petition and Motion is warranted under the standard applicable in the Second Circuit for granting a permanent injunction. That standard is essentially the same as the standard for a preliminary injunction, except rather than demonstrate a likelihood of success on the merits, the movant must actually succeed on the merits. See NextG Networks of New York, Inc. v. City of New York, No. 03 CIV 9672 RMB/JCF, 2006 WL 538189 at *8 (S.D.N.Y. Mar. 6, 2006) (aff'd in part, rev'd in part on other grounds by NextG Networks of NY, Inc. v. City of New York, 513 F.3d 49 (2d Cir. 2008)). In addition, the movant must make a showing of the likelihood of irreparable harm, i.e., an injury that cannot be redressed through financial compensation. See id. Irreparable harm must be likely and imminent, not remote or speculative. See id.; Civic Ass'n of Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 631 (S.D.N.Y. 1996).

It has been consistently held that irreparable harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. See, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713-14 (2d Cir. 1987); Cunard S.S. Co. Ltd. v. Salen Reefer Servs., AB., 773 F.2d 452, 458 (2d Cir. 1985) ("Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.") (citing Canada S. Railway Co. v. Gebhard, 109 U.S. 527, 539 (1883)); In re

NY1 7340659v.14

<u>MMG, LLC</u>, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule ... irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors.").

The risk of such irreparable harm is manifest here.  The Scheme Companies, in the aggregate, have over 4,365 policyholders with respect to the CUAL Pool who are based in the United States and who could bring actions in the U.S. to disrupt the orderly determination of claims and fair distribution of assets in the English Proceedings.  Absent an injunction, the Petitioner may be forced to expend significant resources of the Scheme Companies in defense of claims in the United States.

This injunctive relief may be obtained without undue hardship or prejudice to the rights of U.S. Scheme Creditors.  As explained in the Petition and Motion, and shown in the Explanatory Statement and Schemes, the Schemes contemplate a means of claimant participation similar to that contemplated by the Bankruptcy Code.  The claims valuation process is applied uniformly to all creditors, regardless of domicile.  Each Scheme Creditor was afforded adequate notice and an opportunity to be heard at the Creditors' Meetings held on June 10, 2010 and at the subsequent hearing sanctioning the Schemes.

For the reasons earlier expressed, relief is necessary to ensure that the scheme process is protected from unilateral creditor action while at the same time preserving and protecting the rights of U.S. creditors to due process.

*[The remainder of this page is intentionally left blank]*

## V.    CONCLUSION

The Petitioner respectfully submits that the Petition and Motion satisfies the requirements for the recognition of the English Proceedings as foreign main proceedings or, alternatively, as foreign nonmain proceedings and for the injunctive and other relief sought therein.  Unless the relief requested is granted, the Schemes and the English Proceedings will be undermined with the consequence of imminent and irreparable harm arising to the Scheme Companies and their creditors through exposure to unilateral U.S. creditor actions in derogation of the collective interests embraced by the Schemes.  In order to ensure equal and consistent treatment of all Scheme Creditors, each must similarly be bound and the assets of the Scheme Companies similarly protected, irrespective of a diversity of domicile or location.  For the foregoing reasons, the Petitioner respectfully requests that this Court grant the relief requested in the Petition and Motion.


Dated: September 22, 2010                    SIDLEY AUSTIN LLP
         New York, New York


                                             By: /s/ Lee S. Attanasio
                                             Lee S. Attanasio
                                             Alex R. Rovira
                                             Debra W. Minoff
                                             787 Seventh Avenue
                                             New York, New York 10019
                                             Telephone:  (212) 839-5300
                                             Facsimile:   (212) 839-5599

                                             *Attorneys for the Petitioner*

NY1 7340659v.14